Case numbers 241707 and 241751. Barbara Mercer v. Anthony Stewart. Oral argument not to exceed 15 minutes per side. Mr. Shimkus, you may proceed for the appellant cross-appellate. Good morning, Your Honors. Scott Shimkus appearing on behalf of Respondent. I'm requesting two minutes for rebuttal. Yes, that's fine. Your Honors, when it comes to habeas review for state prisoners, the standard is paramount. Congress has carved only two paths to habeas relief for state prisoners under AEDPA. The first is for a legal error under 2254 D1. And the second is for a factual error under 2254 D2, all constrained by 2254 A, which says there has to be a federal violation of law. So in this case where Petitioner Barbara Mercer was convicted of two murders and the state courts determined that she was not entitled to a defense of others jury instruction under state law, the district court applied the wrong standard and thereby reached the wrong conclusion. This is properly a D1 case, but the district court improperly applied D2, used that to strip this issue of any deference under AEDPA, applied de novo review, and then granted habeas relief. That decision was wrong for three essential reasons, any one of which is sufficient to reverse this grant. The first is because this was a mixed question of fact and law, which falls under D1, not a purely factual issue under D2. And Ms. Mercer has already conceded that if this case falls under D1, she loses. The second issue is the state courts properly determined that there was no evidence of a reasonable and honest belief of a defense of others in this case under state law. And third, that there was no due process violation here and the lack of an instruction did not substantially affect the verdict. So for all these reasons, we would ask this court to reverse on the granted issue. I'm certainly aware that there are certified claims on denied claims as well, and I'm more than happy to answer questions about that. But I do intend to focus my argument on the granted claim, but of course I welcome questions. Let me ask, are you, just to be clear, have you conceded your procedural default claim? Not necessarily, Your Honor. We would still assert that there were procedural defaults here, including on the defense of others instruction. But we also acknowledge that in our initial response to the habeas petition, that counsel below did affirmatively state that we were not asserting a procedural default. So we try to correct that. Can you really appeal that? That's my reading of your briefs, but if you think that you raised it somewhere, this is your opportunity to give us the place to look. Sure. I mentioned that we tried the correction in the district court. I think I have to say I'm not necessarily pressing that here because I do want to respect the positions that we're taking in the district court. But that doesn't necessarily stop this court from sua sponte reaching that procedural default. Of course, we would welcome that, but we're not pressing it either because I do want to respect what happened in the district court.  But even without the default, there should not have been a habeas grant here. Like I said, this issue was a mixed question of fact and law. And this court has been very clear time and time again that that falls under D-1. And the reason the distinction between D-1 and D-2 is so important here is because if this case does fall under D-1, this court's decision in Cahey says there cannot be relief here because there's no clearly established federal right to a self-defense instruction. And so if this case comes under D-1, which it should, there's just no ground for relief. The district court went to D-2 instead because they focused on this no evidence language. But I really must point the court to I cited this in my brief in unpublished decision from this court in 2021, Williamson v. It was a denial of a certificate of appealability. But I really would emphasize the court to look at that case because it is so close to what happened in this case. There it was about a self-defense instruction. The state court said there was nothing in the records to support that instruction. And this court said that's a D-1 issue, not a D-2 issue, even though the petitioner strongly pressed for a D-2 finding in that case. Well, what if the district court, I'm sorry. What if the state court made a clear factual error in the context of evaluating a mixed claim? Now, here, what I understand the district court to have done is the district court said, well, the state court said there was no evidence, meaning zero evidence as opposed to not enough evidence. But the district court said the state court said there was no evidence. And obviously, there was some evidence. Well, some meaning more than zero because the legal standard is some. But I mean, it's a more than zero. Let's say it's a scintilla of evidence. I mean, is that a factual claim? There either is or is not evidence. So there are contexts in which there can be a factual finding that affects the decision under D-2, even in the context of a jury instruction claim. But that's not this case because the context matters. So if you look, there are three times where the Michigan Court of Appeals says, you know, there is no evidence. The very first time, it is coming off the heels of them announcing the standard for self-defense, which is there has to be an honest and reasonable belief of imminent danger such that deadly force is required. So in the very next sentence, at the start of that next paragraph, they say, in this case, there is no evidence of a reasonable and honest belief of a need for defense of others in this case. And so looking at that, and they quote reasonable and honest belief because they had just cited the self-defense standard. And so they're applying the facts to the law in this case. That's why we have a mixed question here, not necessarily just a factual determination, because they're bringing the law and the facts together in that moment. So you do think that sometimes there could be a factual mistake in the context of a mixed question that would allow the district court to proceed under D-2? So like what if, let's say the district court said, I'm not going to give a defense of others instruction because despite all the evidence in the record being to the contrary, Mr. I think it's Thomas, was not in the bedroom with Mercer. Like he just made just a fact, like all the evidence. I mean, we could have a video camera that says, here are the two people who were in the bedroom. And the district court says, oh no, it was Mickey Mouse who was in the bedroom. Like just clear factual error. So that's why I'm not going to give this jury instruction. Would that be a D-1 question or a D-2 question? I think that can be a D-2 question. I don't want to sort of appear like I'm stuck in the mud here, that every jury instruction claim will always, no matter what, be a D-1 issue. It can be a D-2 issue, but the context is what is so, so important. And so, sure, or say in their statement of the facts, they make this factual error and then perhaps they repeat it in the analysis. That might lead more to a D-2 issue. But here, the Michigan Court of Appeals said that there was no evidence of a reasonable and honest belief of a defense of others. And if you look at their statement of facts and you look at their analysis, they're clearly aware of the very evidence that the district court accuses them of disregarding. They cite Janish's statements. They cite Mercer's statements. They were plainly aware of the evidence. They didn't disregard it. They didn't get it wrong. They didn't just totally set it aside. They knew about it. What they said was, perhaps what I should say is, they meant that there was not sufficient evidence here to support the instruction. There was not credible evidence. And so if this court goes and looks at, for example, Hodge v. Plappert, there the Kentucky Supreme Court said there was no credible evidence to support the legal issue there. And admittedly here, it's not the same. They didn't say no credible evidence, but that's what they meant. And we know that what they meant matters because if we look at Bergman, the statement there, they make a very similar claim there. The petitioner made a similar claim where they said the state courts disregarded evidence, and so this should fall under D2. So the issue was whether a toxicologist expert should be employed for the defense. And the state court said there wasn't a demonstrated need for one. So they said the petitioner defending in that situation did not explain why she could not safely proceed to trial without her own expert. But the record did contain an explanation. Counsel said, well, I need to know what the test results meant. And so this court said in Bergman, this is in 2022, Judge Backshelter, you were on that panel. The court said, when read in context, however, the Michigan court was holding that counsel's explanation was insufficient to satisfy the legal test, not that he did not provide one at all as a matter of historical fact. And that's what matters here. That's what brings us under D2 is there has to be a dispute about basic primary.  You want to be under D1?  Absolutely. But what I was just saying, Bergman talks about this matter of historical fact.  That could be under D2. Right. And so D2, what brings us under D2 is a dispute about primary, basic, or historical facts external to the case. That what happens sort of in the real world. And that's just not what the Michigan Court of Appeals was doing here. That really this should fall under D1. Again, because the context is just so crucial. I guess at this point, unless the panel has further questions, I could reserve the rest of my time for rebuttal, but I'm happy to. Let me ask you this. If we were to affirm the district court, which you don't want us to do that, but if we were to, does the state intend to retry Mercer? I haven't talked to the prosecutor about that. So my honest answer is I don't know. You don't know. I'm just curious, what happened to Janish? I mean, he was tried concurrently. That's correct, Your Honor. So Mr. Janish was convicted of voluntary manslaughter for the death of Hannah. That was the victim in the driveway. And then he was convicted of second-degree murder for Thomas, the gentleman in the house. So Mr. Janish has those convictions. He got sentenced to, I believe it is, life terms. And he has never appealed his convictions and never filed for any habeas relief. He is simply in prison at this point. I think at this point, then, Your Honors, I'll reserve the rest of my time for rebuttal. Thank you. Good morning. Casey Swanson on behalf of Barbara Mercer. I would like to focus my time on the ineffective assistance of counsel issue. At the beginning of this trial, Mercer's attorney stood up in front of her jury and told them that he would be relying on the defense of duress, that the prosecutor would need to prove beyond a reasonable doubt that these homicides were not committed under duress. At the end of closing, it was brought to the court's attention that the defense of duress is not available in Michigan. The instruction was removed from everyone's binder, and the jury was told that the trial would proceed without the instruction that Mercer's counsel had relied on. In that moment, Mercer and her attorney lost all credibility in front of the jury. You say that, but the prosecutor, when he brought that up, said that it was his mistake and the judge's mistake as well, right? So it didn't just put your, you know, Mercer's attorney under the bus. Put them all under the bus. So why does that distract from, why does that take away credibility from the defense attorney? It doesn't absolve Mercer's attorney of the issue here. It's his job to protect her rights and to present a defense. And when, at the beginning of the trial, the jury is told that the defense that he's relying on doesn't exist, they're essentially moving through the trial with the understanding from the beginning that there is no defense for Barbara Mercer. Wait, I thought he also, he proceeded on the defense that all, that she understood that Janice was only going to scare the two victims. I know that the Michigan Court of Appeals and the District Court sort of relied on this perspective that trial counsel salvaged the defense by changing lanes and moving on to an intent to scare defense. But I think the reality is when you really read his closing, he didn't. He didn't abandon the duress defense like he should have. He continued to rely on the same themes and theories that he needed for the duress defense. He focused on the fact that these victims were terrifying, that they were threatening the defendants, but also said that the defendants intended to scare the victims. It left the jury with a confusing defense that really didn't leave them with any path to acquittal for Barbara Mercer. And so that is the prejudice here from his ineffective assistance of counsel. It's deficient for sure to rely on a mistake of black letter law. It's never been a defense to homicide duress in Michigan. And he relied on that and continued to lean on it, although saying that he wasn't relying on it in closing, he really continued to push the facts through that theory. But didn't he also, I mean, even to the extent that's true, I'm not sure you've responded to Judge Gilman's point that he also offered a separate defense. The intent to scare defense is inconsistent with the themes of the duress defense that remained present during his closing. So during his closing, her counsel never let go of the same points that he was making during his opening, which is that the victims were terrifying, that they were threatening the defendants, that the defendants were scared. And all of those things together go to a duress defense. And I just don't believe he actually committed to the intent to scare defense the way that... He didn't push it hard enough in your view. Well, I think that he was talking out of both sides of his mouth. Honestly, he was talking about two different defenses that don't make sense together. It's an illogical closing, an illogical defense. And I think that if he had done his homework before the case and understood what defenses were available to him, he could have presented an intent to scare defense from the beginning in a way that made sense and continued on through the trial with this intent to scare defense. I guess I'm a little puzzled. The duress defense would be duress by whom? I assume duress by her co-conspirator Janish, right? She felt coerced by him. She wouldn't be coerced by the victims. That might be a self-defense. Well, so I think that that's exactly the problem. I think that was the attorney's theory, is that the duress came from the threats and the pressure and the violence from the victims, the fear that the victims were instilling in the defendants. And the way that you're puzzled is exactly my point about his closing is that doesn't make any sense because your defense truly is an intent to scare.  So I believe that the ineffective assistance of counsel issue is one that the Michigan Court of Appeals and the district court got wrong. And I would ask the court to reverse on that issue. Let me say this. Let's look at our problem, or your problem, is AEDPA. I mean, the issue here is not if we decide, well, the Michigan court maybe got it wrong, is not enough for you. You've got to show that the state court decision was actually unreasonable, right? That no fair-minded jurist would reach that decision for us to sustain a habeas claim. Is that correct? Yes, and I believe it was. When we look at Strickland and the standard that the performance must be deficient from counsel and that it must cause prejudice, that's what we have here. That's a standard that Ms. Mercer has met. And so I believe for that reason that the district court was wrong when it refused to grant relief on this issue. I believe that it was right when it granted relief on the issue of the defense of others instruction. I disagree with the state that this is appropriately a D1 issue. This is a D2 issue. This is a factual question. How is it a factual question? I mean, the question is whether there was some evidence from which a reasonable jury could conclude that the defense was warranted, that the defense of others instruction was warranted. How is that a fact question? It becomes a fact question when the Michigan Court of Appeals ruled that there was no evidence to support that instruction. D2 says that when there's an unreasonable determination of the facts, that's when we can have a pathway to relief, and that's what happened here. But aren't they necessarily making a conclusion that there's no evidence or not enough evidence to go to a legal standard? So they, by definition, they're looking at these facts and evaluating them against a legal standard. Doesn't that make it a mixed question? I think that in this case, it's unique because the Michigan Court of Appeals walks through all of the facts and then says there is no evidence. I know that... But don't they cite the very evidence that you think that they should have relied on? Like, they talk about Janish's statement. Yes, and I think that that demonstrates what an unreasonable determination of facts that this was. I know that I think the state would prefer that they use language like there's no credible evidence, but that's just not what they said. They walked through evidence. We don't fly-spec state court opinions under AEDPA. We have to read them reasonably, right? I mean, AEDPA tells us pretty much hands-off, not hands-off, but give a lot of deference to the state court decision, and so we can't read no evidence. We have to read it reasonably in light of what they're doing. When they cite the very evidence you say they're ignoring, why would we think that they didn't consider that evidence? They disregarded it. They said that there's no evidence. That's the fact that they said. There's no evidence here. Yeah, but couldn't that mean... So if they had said not enough evidence, you'd abandon your claim? I think it'd be a tougher question, but this is what I'm saying is I think that this is a unique case. I don't think that every time we're talking about instructions we're going to be in the world... But they said no relevant evidence. I think that that'd be a tougher claim, too, but here they said no evidence, and that's just not what we have. No evidence from which a reasonable jury could conclude. So isn't that kind of saying no relevant evidence from which a reasonable jury could conclude? No. I think that when they said no evidence, that was an unreasonable determination of the facts. We have evidence here, and they had evidence. Let me ask you another question. So let's say you're right. Let's say this is a D2 claim. The district court still went ahead and found a due process claim, a due process right to a self-defense instruction based entirely on out-of-circuit case law. EDPA doesn't get rid of TEAG. TEAG still exists, and it tells us that federal courts can't make new law in habeas, basically. Instead, it has to be a broad consensus. You have to look out into the legal landscape and have a broad consensus such that no reasonable juror would conclude that this rule didn't exist in the law. Now, it doesn't have to be based on clearly established Supreme Court case law the way EDPA requires, but it still has to be a broad consensus, and he just cited the Second Circuit and three state courts. When we look at Brumfield from the U.S. Supreme Court, we can see that D2 can be applicable in cases like this. Right, but I'm saying even if you get over D2, you still have to deal with TEAG, and I don't know how the district court, I mean, it seems to me like they've applied a new rule. I disagree. I think that the court relied on the appropriate authority here to come to the right conclusion as it relates to the defense of others issue. So we'd ask that the court affirm that part. Is the Supreme Court ever recognized a right to a jury instruction on self-defense? Under CAHIE, we can see this court talk at length about how there's no specific case on point about the right to self-defense in the way that would allow relief under D1, and I acknowledge that, but I do think that this case truly is appropriately under D2. This really is a unique case where we're talking about the factual determination of the Michigan Court of Appeals being unreasonable. But you know, the state court knew the facts. It just, you're just saying they then, they stated the facts and then they ignored the facts, right? Is that sort of your thought? Your Honor, I'm saying that they made an unreasonable determination of the facts when they said that there's no evidence. And I see that my time's up and I'll save the rest for rebuttal. Thank you. All right, we'll hear your rebuttal. Your Honors, I'll be pretty brief. In terms of the ineffective assistance, I think the court's questions really kind of fleshed out this issue that there really wasn't any blame that even could have been placed on counsel here, on Mercer's counsel in particular. It was really made clear to the jury that this was sort of a global misunderstanding. And really the primary case that Ms. Mercer relies on here is English v. Romanowski, and that was a very different case because there the trial counsel said in the opening statements, you're going to hear from this certain witness, and then the witness is never heard from for the rest of the trial and the jury. There's been a shift here by counsel. It's not the question of was the ineffectiveness with regard to whether duress was available, but since duress was not available, if she were forced to concede that everybody was ineffective with regard to whether duress was available under Michigan law, she was forced to the question of since it wasn't available, the counsel was ineffective because the defense then that was being offered was inconsistent with the fact that now duress is not available, and that's how it had been pursued up until then. Forgive my question to you, Judge, but you mentioned that Ms. Mercer has sort of shifted her position here. Would you say that's a shift from her briefing or from how the claim was raised? And I ask because it could matter whether that claim is preserved. I think it was a shift here. I'm not sure I think it was a shift in the briefing. Again, I only ask because I think that could bring up exhaustion or sort of default issues, whether the state court was allowed to comment on that claim in the first place, but I think going back to I don't think there is an inconsistency necessarily, or speaking out of both sides of counsel's mouth here, as counsel put it, that intent to scare and duress are sort of diametrically opposed defenses. I think in some ways they do kind of come together because they say there was this intent to scare. Mercer was scared. She thought Janish was just going to scare, but as Judge Gilman pointed out, I think the claim here was essentially that Janish was the one putting Mercer under duress. And so this sort of general theme of fear, I think could come together. And the other thing too is there's nothing wrong with presenting inconsistent defenses. It can be prudent, but I don't think it was presented to the jury that way in this case. For all these reasons, Your Honors, I'm happy to take more questions, but I do see my time is up. We just ask you to reverse the habeas grant and to affirm the denied claims. Thank you. We'll hear Sir rebuttal. Since this is a cross appeal, just for everyone else in the audience. Not everybody gets a second rebuttal, but because we have an appeal and a cross appeal. I would like to address the state's position that English is a completely different case. And it's really not. In English, the defense attorney there did promise a witness and failed to deliver because he too failed to do his homework and realized after trial had started that that witness actually wasn't going to be helpful. Here, we have a defense attorney making a mistake of law, of black letter law, and getting up and promising a defense, relying on that defense, and then it turns out it's not going to be available for Mercer at all. And so I think it's really a great parallel to the English case. And so I disagree with the state's position as it relates to that. I would like to address the remedy issue a bit. I know that the district court granted relief as it relates to the sentence of Thomas's, the conviction related to Thomas. I also believe that Ms. Mercer should have been sent back to the state court for resentencing as it relates to the murder of Hannah. Vacating the sentence for Thomas here wasn't enough. 2243 says that once the hurdles have been met of the EDPA standards, the court shall dispose of the matter as law and justice requires. And the district court had broad discretion to fashion an appropriate remedy here and what it came up with falls short. Justice requires that Ms. Mercer be sentenced with proper guidelines calculation which is affected by the vacated conviction and an accurate portrayal of culpability at sentencing. If she either were never tried, retried for the murder of Thomas or if she were acquitted for the murder of Thomas, it paints her in a completely different picture in front of her sentencing judge. She would no longer be a double murderer under those circumstances. She would no longer be someone who wasn't entitled to a defense of others instruction but rather someone who her co-defendant reasonably believed was about to be sexually assaulted maybe or at least there was some evidence of that. She would be someone who had a lower guidelines level. The Michigan Guidelines score 100 points for multiple victims which puts her automatically in the highest defense level category. Those 100 points wouldn't exist if she were acquitted of the murder of Hannah. So I think that here a resentencing on the remaining conviction is the only appropriate remedy if the relief is limited to the one claim that's been granted in the district court. Again, the court had broad discretion to do justice and it recognized a due process violation but then it left Mercer exactly how it found her which is still serving life in prison and justice required more. And unless the court has further questions, that's all I have. All right. Thank you. Thanks to both councils for your helpful arguments and briefs. The case will be submitted and the clerk can call the next one.